Welcome back. Thank you very much. And if it still pleases the court in any way, my name is Joshua Furman. I represent the plaintiff on appellants in this case, Jeffrey Herson and East Bay Outdoor. I'd like to start by addressing the equal protection issue, Your Honors. In the village of Willowbrook, equal protection for a class of one is available so long as there are facts to show that two different people were treated differently and that there is no rational reason that they were treated differently. Didn't the court say there has to be evidence that the government official intentionally treated the party differently? Intent, yes, which is just an intentional act. There doesn't need to be any sort of other mens rea or intention to do harm. It just has to be it was an intentional act, not an inadvertent act. In this case, the evidence in front of the court on summary judgment that there were other applicants who got treated in a much more preferential fashion. But that's not the test, right? Can you show anywhere in the record that I think it was Ruby Benjamin knew about it, intentionally chose to treat Mr. Herson differently? Yes. Ruby Benjamin was a planning technician. She approved multiple signs. Show us in the record rather than your good argument, because I looked, and this is a very important question to me. So where in the record should I look? I think that was my call. You should look at Volume 4 of the excerpt to record, page 732. And at that point in the record, you'll find an LED sign approved by Ruby Benjamin without design review, without any other sort of permitting process. And that is essentially an ad hoc variance that was granted by Ruby Benjamin in violation of the Section 1504.930 of the original sign code. So she intentionally treated that person perhaps in a different way? Is there evidence that whoever the permittee was was similarly situated to Mr. Herson? Because my understanding was Mr. Herson went in and said, oh, just go ahead and deny this, or words to that effect. That doesn't affect whether he was situated, how he came in and applied in words that he said at that point in time. He made the application. And the application was summarily denied, while other applications were summarily granted, intentionally, by Ruby Benjamin, as well as other people within the city. I don't think that we can go and say under Village of Willowbrook that it has to be that official. It seemed to be that the city would have to single out your client for differential treatment. And there's evidence that other people in the city got more favorable treatment, but that seems different than to say they singled out your client for unfavorable treatment or differential treatment. And that's where I was struggling. And I think Village of Willowbrook spoke to that, because Village of Willowbrook looked at what the Seventh Circuit said. And the Seventh Circuit said, well, there was this intent to harm them, the applicants in that case, because there was a prior lawsuit and they were still angry about it. Well, when I read Willowbrook, and I'm not trying to cut off your answer, but when I read Willowbrook, there were certain words that were very important. They were, has been intentionally treated differently from others, similarly situated, and that there is no rational basis for the difference in treatment. Now, if I read those very carefully, I'm still back to my good colleague's question. If the guy goes in, files a permit, and then goes in to talk to the lady and he says, well, just deny it, that sounds like I'm just in here to just file because I want to file a lawsuit. Don't look at it. Don't worry about it. Just get rid of it, because all I want to do is file a lawsuit anyway. That's a totally different situation than one who goes in and really wants a permit. That doesn't seem to me I can say there is no rational basis for the treatment. There's no rational basis to differentiate the approvals from the disapprovals. Those, and I apologize, Your Honor, but those permits were applied for after the initial complaint was filed, and the trial judge says, well, we have to do this permit process. So they came in and they applied, and that's what happened. And the city didn't say they changed how they were going to address these applications because of any verbiage that Mr. Hurson might have said at the counter. What the city did is they looked at their sign code and they said, no, this sign code bans these kinds of signs. On the other hand, they persistently allow others to have these kinds of signs. So in that way, we do have the exact same facts. But we're really looking at intent and rational basis here, and whether there's anything that we can suggest that there was here. Do you agree with that? We're looking at the intent. I think the intent is a foregone conclusion. It wasn't accidental that these permits were denied. It was intentional. And the rational basis is, and I'll have a few other sites of the record that I'd be pleased if we looked at. There was that LED sign by Ruby Benjamin that was approved. There was a wall sign by Ruby Benjamin that was approved. That's at 3, Volume 3 ER 388. Did the city approve all signs except for your clients, so whether they met the code or not? Is there evidence that only your client or maybe one or two others were denied? Everybody else was approved regardless? I don't think that's in the record, Your Honor. So we know some favored. I mean, from the briefing, it sounded like people who had taken their city councilman out to lunch got approval, but everyone else, the rules just fell on as they were written. So that, again, didn't seem to me like intentionally singling out your client. It was that, well, you took the trouble to take your city councilman out for lunch and buy him a few drinks. That would be enough to get special treatment. But the fact that some people could get special treatment doesn't mean that everyone else was singled out and intentionally treated differently. The fact that at least one person treated differently from at least one other person is under Village of Willowbrook. So your view is that's enough. So if one person got a permit that they were entitled to, then everyone else has an equal protection claim. That's sort of different than a class of one theory, right? That would be the favored ones versus the unfavored ones. So is that a different theory? I don't think so. I don't think it is a different theory because we're just sitting here talking about Mr. Herson and East Bay's applications. We're not talking about other people's applications. And there were the signs that were over height that were approved are at Volume 3, page 503. In the record, Volume 3, page 422, you're talking about an 83-foot, 9-inch sign that was approved within 660 feet of a freeway oriented to a freeway. You're talking about a sign that passed initial review that was 100 feet tall with an 18-by-31-foot LED panel on it that the city did not reject on design review. On the other hand, our signs were rejected out of hand based on the fact that they were not permitted as within that zone, within that zone of the freeway. Do you have other issues you really want to hit up to? Anything that relates to this issue about whether or not the Type B freestanding sign applies to this sign that my client was attempting to erect, it does not. There was no concession before the trial court. If you look at the record of the transcript on November 30, 2011, and what Mr. McConnell said there on pages 7 and 8 of that transcript, it's clear that he's only talking about the physical attributes of the Type B freestanding sign and then says that within the proximity to the freeway, all of these signs were banned. It's not that it's a Type B, it's that all of these signs were banned. So there is no such concession. And if you look at what's permitted for a Type B freestanding sign or for any sign within that range of the freeway, you'll find that there's no political speech permitted whatsoever. The code section is Volume 7, 1468 of the record. Are you addressing your second issue? Is that what you're saying? I was moving on to whether or not there was a constitutional sign code in the first place. Well, it seems to me that what you were suggesting is that the district court had to say that this was a strict scrutiny situation for exemptions. Is that what you're addressing? Yes. Well, it seemed to me that's what the district court did. The district court applied strict scrutiny. In fact, it treated the exemptions as content-based regulation, applied strict scrutiny. It did exactly what you would have argued they would have done. And you didn't argue any error about that. Well, we argued that the court failed to recognize that those exemptions, such as they are, make the entire regulation content-based. Well, I understand that. I understood your argument. You said it ought to get strict scrutiny review. And because they're content-based, they ought to get strict scrutiny review. Then I read what the district court did, and it seemed to me that he applied strict scrutiny review and did exactly then what you're arguing they should have done. And then you didn't argue any error in the strict scrutiny analysis. In terms of the exemptions themselves, yes. But what the judge failed to recognize, Judge Hamilton did not put in her decision, is the fact that they cannot sit there and start applying the height and size restrictions that would supposedly have applied but for these exemptions. Under the law of this Court, those are content-based. So you're now moving to your height and size provisions? Is that what your argument is about? Well, I mean, I've tried to break your stuff down. First of all, we should have given strict scrutiny to the content-based exemptions. I saw the district court did exactly that. Then I didn't see any error about that that you had argued. So I thought, well, I guess the court did what he asked them to do. Then I moved to the height and size provisions. And, again, I guess I'm trying to figure out what it is. I mean, our precedent expressly states that size and height restrictions are evaluated on a content-neutral time, place, and manner regulation. That's Get Outdoors 3. And so I guess I'm, again, having a little trouble. Where did they err? They're content-based exemptions from the height and size restrictions. That renders the entire sign code content-based. You can't then separate out those sections and say they're the height and size. But, as I said, I agree they're content-based. And he applied strict scrutiny, or she applied strict scrutiny. And here we are. I think we've said in some post-till cases, in GK limited, that signs that are limited to, like, traffic controls, broad categories of speech are not content-based. Why is it different here? It's not simply – this is not simply a speaker-based situation. I thought the ordinance said traffic control endangers signs erected by a governmental entity. That is one of the exemptions. But you also have exemptions for – you have exemptions for – you do have exemptions for the gateway signs. You have exemptions for signs that are identifying certain areas. And that's not necessarily a government entity sign. You additionally have to be aware of the fact that on those particular signs, all political speech is banned. So GK limited said public signs, hospital or emergency signs, legal notices, danger signs, pretty broad categories of speech said, that's okay, that remains content-neutral. Is that distinguishable here? Well, sure, because the code here had much broader exemptions. And what's the broadest? What's the most – not a category of speech, but something based on the message? Well, the entire – the copy that was printed on the sign had to be reviewed as part of the design review process to put the thing up in the first place. So I'm not stepping outside the exemptions argument, but there's no question that everything about the entire process from point A to point B of getting a sign erected was content-based. Do you want to save the rest of your time? I will, Your Honor. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court. Matthew Zinn appearing on behalf of Defendant City of Richmond. I'll start with the equal protection argument since that's where opposing counsel began. In this case, the district court properly concluded that there was no intentional differential treatment of similarly situated signs. And I want to emphasize, Your Honors, that the signs that opposing counsel mentioned here today were not presented to the district court. In the district court, they included a huge stack of exhibits in opposition to the motion for summary judgment, which included a group of permit applications and other documents. These signs were identified in those exhibits. They were never brought to the attention of the district court. One sign was brought to the attention of the district court. That was the Pacific East Mall sign that was the retrofit of an existing sign. And in that situation, the planner who approved that sign was completely different from the planner who denied their signs. There was no evidence that there was any intentional differential treatment in this situation. Instead, all they really have is a lot of sort of a relevant innuendo about one of the city council members. But the city council member did nothing wrong in this case. He simply said that he works with all small business people in the city of Richmond to help them navigate the city's regulatory processes, and that he does that for anyone who would come. There was no special treatment given to the Pacific East Mall folks in this case. The sign that the additional sign that was not presented to the district court that they was a wall sign that was approved by Ruby Benjamin for El Portal Church of Christ. It was a small wall sign that identified the church and its services. It was approximately 84 square feet in area. By contrast, plaintiffs were proposing to put up billboards, the smallest of which was several hundred square feet in area, that were proposing to display off-site messages. So this was a small on-site sign. They were proposing large, huge off-site billboards with advertising and noncommercial messages. Those are appropriate distinctions under the Metro Media case. So there's really the district court was very careful here and acted appropriately in denying the equal protection claim. But weren't we on summary judgment there? Yes, Your Honor. And on summary judgment, it seems to me that the district court's not to weigh the evidence. The district court is to find there's either no evidence or there's some. That's the best the district court can do. That's correct. As I understand it, in this particular instance, the district court said, based on the evidence presented to it, there was no evidence. Isn't that what the district court said? Yes. In other words, they didn't say, just didn't intentionally treat them differently, making a value judgment. The district court said there's no evidence. Yes, that's right, because there's no evidence that these other signs are similarly situated to. So the way you're getting around the particular arguments made by counsel here is to just suggest those arguments were never placed in the district court's record? Well, with respect to a large variety of the signs, that's one of the arguments. But I'm also arguing that for this El Portal Church sign, for example, it's they were not similarly situated. There's no evidence that that sign and that applicant is similarly situated to plaintiffs. So these references that counsel made were in the record but just not argued? Is that it? They were in the record in the sense that they were submitted with over 100 pages of exhibits with no discussion and no appreciable organization. In fact, one of the signs that counsel referred to, the materials presented were simply an application. It was never approved. And that's the – I believe that's the sign at Volume 3, 503 of the excerpts. It was really a document dump in front of the district court. And the district courts obviously can't be expected to cull through a huge stack of documents looking to ferret out evidence that would support the plaintiff's position. The plaintiffs need to bring it to their attention. If I may, I'd like to move on quickly to the current sign ordinance. Now, we have two sets of sign ordinances here. The city repealed the original sign ordinance in July 2009. The current sign ordinance was adopted after a long public process that plaintiffs didn't bother to participate in. And they've only challenged one exemption in the current sign ordinance, and that's the exemption for – It's all a new ordinance, right? Excuse me? It's the new ordinance. It's the new ordinance, new current ordinance. So any idea about the old ordinance is moot because it's all gone. So it's a damages claim, though, right? That's correct. There is a damages claim. As to the old ordinance, we argue that under Get Outdoors 2, he clearly has no standing to proceed with those damages claims. Does the new or the current ordinance incorporate a design review provision in its variance procedure? No, it does not, Your Honor. And the district court concluded that. The design review process remains in the municipal code because it's applicable to zoning decisions, houses, and so forth. In the old ordinance, there was a cross-reference between the sign code and the design review provisions of the zoning code, and it incorporated them. That was eliminated with the current ordinance. The current ordinance has no design review component to it. I think opposed to counsel also makes an argument about the conditional use permit and that his challenge to that remains. Why isn't that still ongoing? Because for the exact same reason, Your Honor. In the old code, there was a cross – there was a cross-reference between the sign code and the conditional use permit process. The sign code relied on the conditional use permit process. That was severed. The conditional use permit process continues to exist because it's an integral part of land use regulation. So if you want to build a hotel, you need to get a conditional use permit. But you need – you do not ever need a conditional use permit to put up a sign, and obtaining a conditional use permit by itself will not allow you to put up a sign. They are completely separate. So plaintiffs have only challenged one exemption in the current ordinance, one exemption for traffic control and danger signs. On appeal, they've only argued that that's vague, using the rather outlandish hypothetical that it would allow a sign that says, danger, stop abortion. But no reasonable reader would view this exemption as allowing signs warning of moral hazards. And it's otherwise constitutional. Under the G.K. Limited case, under the Reed case, the – there's no evidence that this exemption involves the city favoring one kind of speech over another. And as Judge Smith pointed out, in any event, the district court found that it survived strict scrutiny. And in fact, this Court's decision in the Foti case sort of foreshadowed that. In that case, the Court said, yeah, we would expect that an exemption for traffic signs would survive strict scrutiny, and in fact, if that wouldn't survive strict scrutiny, it's hard to imagine anything that would. The – as to the – as to the damages claims, just briefly, Your Honors, as I mentioned, they lack standing to bring their damages claims because their permit applications were – were independently flawed and could not have been approved on several other grounds. And I want to emphasize two of them. One is that the city has a limit for the total area of signs that can be displayed on any one parcel of property. And the idea of this is to prevent clumping of signs and to prevent a huge array of signs on one property. So it's a – it's a total display area limit that applies to any one property. Their signs violated this limit. They have never argued otherwise. They have never challenged that limit. And it's clearly constitutional regardless. It applies to all signs. It doesn't – there's no content basis to it whatsoever. So that's an independent constitutional basis for the city's denial of the permit applications. And under Get Outdoors 2 and the numerous cases from six other circuits, that's a – that clearly demonstrates that they lack standing. Moreover, the sign applications that plaintiffs submitted were not bona fide. These were not genuine sign applications. In fact, plaintiffs admit that the applications didn't identify the actual signs that they wanted to put up. They asked for – or they identified generic signs. Some of the sign diagrams that they presented were from 2002 and 2003. They were apparently prepared for other entities. They were not proposals to put up actual signs. And I want to underscore actually something that Counsel for Reno mentioned, that these billboards are structures. They're big structures. And so for the city to approve them, they need to have engineering drawings that will show exactly what the sign will look like, how big it will be, you know, where it will be located. And plaintiffs' applications didn't even come close to providing that kind of information to the city. And so this is another independent reason that their permit applications never could have been approved. And as a result, they cannot have standing to challenge the denial. For the same reason, this Court and the Supreme Court have held that plaintiffs could not be entitled to damages because the allegedly unconstitutional provisions of the ordinance were not the but-for cause of any damage because there were these other independent reasons that these permit applications would have to be denied. And that's the Texas v. Lissage case and this Court's decision in Coral Construction v. King County. Finally, Your Honors, the plaintiffs' papers assert a variety of other challenges to the old ordinance and to the current ordinance, challenges that were not presented in the district court. They had four complaints in the district court. I would respectfully submit that the district court was exceptionally cautious in this case to ensure that plaintiffs had a full and fair opportunity to air their claims. And so the claims that they raised for the first time in opposition to summary judgment, there were a number of those. The claims that they're raising for the first time on appeal, it's far too late in the day to be considering those. And with that, Your Honors, unless you have any other questions, the City is prepared to submit. Apparently not. Thank you. Thank you, Your Honors. We'll give you a minute for rebuttal. In response to Your Honors' question right before I sat down, at Volume 7, page 1449, those are the exemptions from the old, the original ordinance, and they're much broader than simply regulatory and warning signs, including temporary display posters, flags and emblems, historic signs. That's for the old ordinance, but I thought your challenge is moot except for damages, and their argument is there's an independent reason for having denied it. Well, the independent reasons for having denied it are just as illegitimate as the code itself. The limit on the total area is not an independent reason to deny it because they have approved signs that are larger than that. It's simply not true that there are maximum height and size restrictions in the jurisdiction of that city. The fact there, and we discussed the application issue. I think we would say, look, we applied. It was denied. They told us why it was denied. And the idea that their claims were not alleged in the earlier versions of the pleadings, I have a hard time understanding where that's coming from. It seems to be quite clear that in every, in the court review, each of the pleadings that were filed below, that all the claims to the exemptions were pled. And if I could address one other issue, and I know I'm over, but it's been a complicated case. We had a long brief, too. The issue of whether the current sign ordinance and what's actionable under the current sign ordinance in terms of injunctive relief is an ongoing issue. The code has been revised again since this has gone on. So if we are remanded on this case, which we ask, and we respectfully think we have to be remanded, to discuss the current sign ordinance and injunctive relief, it will be amended to discuss the new sign ordinance and all the new changes that have gone into it. And we request that we get remanded to do that. Thank you very much, Your Honors. Appreciate your patience. Thank you. All right. The case of Jeffrey Herson and East Bay Outdoors versus City of Richmond is submitted.
judges: Ikuta, Smith, Murguia